```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION

STATE FARM MUTUAL AUTOMOBILE          §
INSURANCE CO.,                        §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §    CIVIL ACTION NO. H-10-2601
                                      §
KATHY SCOTT; TREVOR MOORE;            §
ANGELA LOCHARD, INDIVIDUALLY          §
AND AS REPRESENTATIVE OF THE          §
ESTATE OF BRANDON SCOTT SALI;         §
KASSANDRA CROSS; AND PRESTON          §
CROSS,                                §
                                      §
        Defendants.                   §
```

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 15) and Defendant/Counterplaintiff's Motion for Summary Judgment (Doc. 16). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Plaintiff's motion and **DENIES** Defendant's motion.

### I. Case Background

**A. Procedural History**

This declaratory judgment action arises out of state court lawsuits asserted by Angela Lochard and Defendants Kassandra Cross, and Preston Cross (collectively "Defendant Cross") against Kathy

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 24.

1

Scott ("Kathy") and Trevor Moore ("Trevor").[2] Plaintiff State Farm Mutual Automobile Insurance Company ("Plaintiff" and/or "State Farm") seeks declarations stating that State Farm had no duty to defend or indemnify Kathy or Trevor in the underlying lawsuits and that State Farm was not liable for any judgment against Kathy Scott or Trevor Moore as a result of any claim for damages arising out of a January 4, 2010 automobile accident.[3]

Defendant Cross' counterclaim seeks declarations stating that the vehicle involved in the accident was covered by an insurance policy with State Farm, that Lisa Smith ("Lisa") was the legal owner of the vehicle at the time of the accident, and that Kathy and Trevor were covered as permissive users under the policy.[4] State Farm nonsuited original defendants Trevor, Kathy, and Angela Lochard.[5] The court now considers State Farm's and Defendant Cross' cross-motions for summary judgment.

**B. Underlying Suits**

Andrew and Lisa Smith ("the Smiths") owned a corporation named Andrew T. Smith & Associates ("Smith & Associates"), which owned a

---

[2] The underlying lawsuit filed by Angela Lochard on behalf of herself and the estate of Brandon Scott Sali against Kathy and Trevor was filed in the 272nd District of Court of Brazos County, cause number 10-000-442-CV. The underlying lawsuit by the family of Timothy Errin Cross was filed against Trevor in the 85th District Court of Brazos County, cause number 10-000885-CV-85. Doc. 1, Pl.'s Original Compl., ¶ 10.

[3] Doc. 1, Pl.'s Original Compl., ¶¶ 12-14.

[4] Doc. 10, Def. Cross' Countercl., ¶¶ 8-10.

[5] Doc. 23, Order for Nonsuit without Prejudice.

real estate business named The Smith Team.[6]  On November 1, 2009, Smith & Associates reached an agreement with Kathy to sell The Smith Team for $7,500 plus a percentage of the total business conducted for three years.[7]

The sale of the real estate business included the name, the business client base, the client files, the computer data and records, the accounts receivable, the office equipment, and a 1998 Ford Expedition ("the Expedition").[8]  Lisa had used the Expedition as her personal vehicle before giving it to The Smith Team several years prior to the sale negotiations.[9]  Lisa's name remained on the title as the owner.[10]  Employees of The Smith Team used the Expedition to distribute flyers and put up signs for the real estate business.[11]  The keys to the Expedition were kept in a bowl at the office, and the Expedition was parked outside the office.[12]

---

[6]    Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 1-2.

[7]    Id. at ¶ 9; Doc. 14-2, Ex. B to Agreed Stipulation of Facts & Summ. J. Evidence, Agreement of Purchase & Sale, pp. 1-2.

[8]    Doc. 14-2, Ex. B to Agreed Stipulation of Facts & Summ. J. Evidence, Agreement of Purchase & Sale, pp. 1-2.

[9]    Lisa stated that she gifted Expedition to The Smith Team in 2003 or 2004, while Andrew Smith ("Andrew") believed Lisa gifted the Expedition in 2008. Doc. 14-6, Ex. F to Agreed Stipulation of Facts & Summ. J. Evidence, Lisa's Dep., pp. 46-47; Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., p. 21.

[10]   Doc. 14-6, Ex. F to Agreed Stipulation of Facts & Summ. J. Evidence, Lisa's Dep., pp. 11-13.

[11]   Doc. 14-6, Ex. F to Agreed Stipulation of Facts & Summ. J. Evidence, Lisa's Dep., pp. 13-14; Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., p. 21.

[12]   Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., p. 17.

Although the written agreement stated that the parties would allocate the purchase price among the assets of the business, no amount was specified for each of the assets.[13] The Smiths and Kathy executed the written agreement on November 2, 2009.[14] On or about November 3, 2009, Kathy took over the running of the business.[15] Later in November, Kathy took the vehicle home to be cleaned, paid for the renewal of the Expedition's registration, and made inquiries about insuring the Expedition under her own insurance policy.[16] Lisa drove the Expedition on November 18, 2009, when her own car was being repaired after a break-in.[17] Andrew Smith ("Andrew") did not drive the Expedition after the sale of the business.[18]

Kathy paid $500 to the Smiths at the beginning of December.[19] She made her next payment of $2,200 on December 19, 2009.[20] The Smiths gave Kathy the title to the Expedition after she made the

---

[13] Doc. 14-2, Ex. B to Agreed Stipulation of Facts & Summ. J. Evidence, Agreement of Purchase & Sale, p. 2.

[14] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 11-12.

[15] Id. ¶ 13.

[16] Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., pp. 22, 25-26.

[17] Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., pp. 37, 44, 49.

[18] Doc. 14-6, Ex. F to Agreed Stipulation of Facts & Summ. J. Evidence, Lisa's Dep., p. 15; Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., p. 37.

[19] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶ 14.

[20] Id. at ¶ 15.

second payment of $2,200, which brought the total amount paid close to the Blue Book value of the Expedition.[21] On December 30, 2009, Lisa signed the title certificate to the Expedition,[22] and placed it on Kathy's desk.[23] After relinquishing the title certificate, Lisa did not drive the Expedition again.[24] Kathy never signed the title certificate or filed it with the State of Texas.[25]

The very day that she received the title certificate, Kathy took both sets of keys, the title certificate, and the Expedition to her home.[26] Trevor was to drive the Expedition to meet with family, but he was unable to start the car and remained at home.[27] On January 4, 2010, Trevor drove the Expedition to school.[28] While

---

[21] Doc. 14-3, Ex. C to Agreed Stipulation of Fact & Summ. J. Evidence, Vehicle Summary with N.A.D.A (Nat'l Automobile Dealers Assoc.) Values; Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., pp. 16-17, 51-52.

[22] Parties stipulate "on or about" December 30, 2009, but Kathy testified the date may have been December 31, 2009. Compare Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 18, 20, with Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., pp. 34-35.

[23] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 18, 20; Doc. 14-4, Ex. D to Agreed Stipulation of Facts & Summ. J. Evidence, Tex. Certificate of Title, pp. 1-2 (unnumbered). Lisa signed her name as a seller but she did not complete the odometer reading, fill in the buyer's name, or enter a date of sale on the title certificate. Doc. 14-4, Ex. D to Agreed Stipulation of Facts & Summ. J. Evidence, Tex. Certificate of Title, p. 2 (unnumbered).

[24] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶ 24.

[25] Id. at ¶ 21.

[26] Id. at ¶ 22; Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., p. 44.

[27] Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., pp. 39-41.

[28] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶ 25.

driving the Expedition on his way home, Trevor struck two pedestrians, resulting in their deaths.[29] At the time of the accident, Kathy was on her way to procure insurance on the Expedition.[30]

The Smiths and Kathy disagreed about whether Kathy asked Andrew for permission for her and Trevor to drive the Expedition, whether she asked if the Expedition would be covered by insurance, and whether she asked if Trevor would be covered by the insurance policy.[31] Kathy said she had permission from Andrew for Trevor to drive.[32] Andrew did not remember a conversation taking place at all.[33] Lisa said Kathy never asked Andrew for permission, but asked Lisa instead, and that she told Kathy that Kathy would need to get her own insurance for Trevor.[34] The Smiths and Kathy also disagreed as to when Kathy became the owner of the Expedition,[35] although Kathy testified that she considered herself the owner after she

---

[29] Id. at ¶¶ 24, 26.

[30] Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., p. 43.

[31] Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., pp. 27-28, 43-44; Doc. 14-5. Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., pp. 37-38, 63-65.

[32] Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., pp. 30, 38, 63, 65.

[33] Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., p. 36.

[34] Doc. 14-6, Ex. F to Agreed Stipulation of Facts & Summ. J. Evidence, Lisa's Dep., pp. 30, 39-40.

[35] Id. at pp. 21-23.

received the title on December 30, 2010.[36]

## C. **The Insurance Policy**

State Farm issued policy number 1259-122-53 ("the policy"), a Business Auto Policy, to Smith & Associates for the Expedition.[37] The policy had a period from July 24, 2009, to January 24, 2010.[38] The policy injury liability limits were one million dollars per person and one million dollars per accident.[39]

Policy coverage only applied to vehicles specifically designated on the Declarations page, which listed only the Expedition.[40] Under the policy's liability coverage terms, State Farm would "pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."[41] Smith & Associates was listed as the named insured under the policy.[42] Liability coverage only covered the named insured and "anyone else while using with [the named insured's] permission a covered auto [the named insured]

---

[36] Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., p. 17.

[37] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 2-4.

[38] Id. at ¶ 3.

[39] Id.

[40] Doc. 14-1, Ex. A to Agreed Stipulation of Facts & Summ. J. Evidence, State Farm Tex. Bus. Auto Coverage Form, pp. 1, 7-8.

[41] Id. at p. 9.

[42] Id. at p. 1.

own[ed], hire[d], or borrow[ed]."[43]  Kathy and Trevor were not listed on the policy and paid no premiums to State Farm.[44]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). The movant must inform the court of the basis for the summary judgment motion and must demonstrate the absense of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

If the moving party meets its burden, the nonmoving party must demonstrate that genuine issues of material fact do exist to be resolved at trial. Celotex Corp., 477 U.S. at 324. When both sides move for summary judgment, they are, in effect, agreeing that no facts are in dispute and that the court should decide the relevant claims as a matter of law. See Fed. R. Civ. P. 56(c).

## III.  Applicable Principles of Insurance Law

As this action is in federal court under diversity jurisdiction, state law governs substantive matters.  Erie R.R. v.

---

[43]    Id. at p. 8.

[44]    Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 5-7.

8

Tompkins, 304 U.S. 64, 78 (1938). The parties agree that Texas law applies to the disposition of this declaratory judgment action.[45]

## A.  **Burden of Proof and Contract Interpretation**

In general, the insured bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.  Tex. Ins. Code Ann. § 554.002; see also Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 350 (5th Cir. 2005)(applying Texas law); Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co., 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied). If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies. Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998)(applying Texas law).

Under Texas law, insurance policies are subject to the rules of contract interpretation. Progressive County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 551 (Tex. 2003).  In construing the terms of a contract, the court's primary purpose is always to ascertain the true intent of the parties as expressed in the written instrument. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995).  To this end, the court reads all

---

[45]    Doc. 15, Pl.'s Mot. for Summ. J., p. 5 (stating that Texas substantive law applies in this case); Doc. 16, Def. Cross' Mot. for Summ. J., pp. 7-14 (applying Texas law throughout the analysis).

provisions within the contract as a whole and gives effect to each term so that no part of the agreement is left without meaning. MCI Telecomms. Corp v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999); see also Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003). "Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." Bituminous Cas. Corp. v. Maxey, 110 S.W.3d 203, 208-09 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

**B.  Duty to Defend**

In Texas, an insurer's duty to defend is a separate and distinct duty from its duty to indemnify. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997). Under the "eight-corners" rule, an insurer's duty to defend its insured arises if the complaint in the suit against the insured alleges facts that potentially support claims for which there is coverage. Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 654 (Tex. 2009). In determining whether this duty exists, the court's only job is to compare the four corners of the pleading with the four corners of the insurance policy. Reyna, 401 F.3d at 350; see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).

When applying the eight-corners rule, the court considers the factual allegations without regard to their truth or falsity. See

GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 310 (Tex. 2006). Only the facts alleged, not the legal theories asserted, are relevant. Reyna, 401 F.3d at 350. The court interprets the allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured. Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141. However, the court may not "read facts into the pleadings," "look outside the pleadings, or imagine factual scenarios [that] might trigger coverage." Pine Oak Builders, Inc., 279 S.W.3d at 655 (quoting Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 142).

## C. Duty to Indemnify

Under Texas law, an insurer's duty to indemnify is narrower than its duty to defend. St. Paul Ins. Co. v. Tex. Dep't of Transp., 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). The duty to indemnify is triggered only by the actual facts establishing the insured's liability in the underlying litigation. Cowan, 945 S.W.2d at 821. Accordingly, "an insurer may have a duty to defend but, eventually, no duty to indemnify." Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997).

## IV. Analysis

Smith & Associates was the named insured on the policy.[46] Both parties agree that coverage under the State Farm policy in this case hinges on the ownership of the Expedition.

---

[46] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶ 3.

11

Defendant Cross argues that Smith & Associates owned the Expedition at the time of the accident because delivery of the title was defective and that Trevor was a permissive user of the Expedition under the State Farm policy.[47] Plaintiff State Farm argues that it does not have a duty to defend or indemnify Kathy and Trevor because Smith & Associates did not own the Expedition on the date of the accident.[48]  Instead, Plaintiff State Farm argues that Kathy owned the Expedition because she had possession and the right of control over the Expedition.[49]  The court agrees with Plaintiff.

Defendant Cross bases her argument on the Texas Business and Commerce Code ("the Code") and the Texas Certificate of Title Act ("Title Act"). Defendant Cross contends that sales of motor vehicles in Texas are governed by the Code because a motor vehicle is considered a "good" under the Code. Tex. Bus. & Com. Code § 2.102; Associates Discount Corp. v. Rattan Chevrolet, Inc., 462 S.W.2d 546, 549 (Tex. 1970). Section 2.401 of the Code addresses when title passes for the sale of goods.  Defendant Cross particularly cites subsection c, which provides that delivery of unmoved goods subject to a document of title occurs when the title is delivered.  Tex. Bus. & Com. Code § 2.401(c)(referring to

---

[47]   Doc. 16, Def. Cross' Mot. for Summ. J., pp. 8-14.

[48]   See Doc. 15, Pl.'s Mot. for Summ. J., pp. 5-8.

[49]   Id.

situations in which delivery is made "without moving the goods").

The Title Act generally applies to the sale of vehicles. Tex. Transp. Code § 501.071. The Title Act dictates the correct form of title and voids sales with defective certificates of title. Tex. Transp. Code Ann. §§ 501.021, 501.071(a), 501.072(a), 501.073.

According to Defendant Cross, the Expedition was unmoved because it and the keys were kept at the location of The Smith Team, and, thus, delivery of the Expedition hinged on delivery of the certificate of title under the Code. However, the argument continues, Lisa delivered a defective title because it lacked certain necessary information and was in her name rather than in the name of Smith & Associates.[50] Defendant Cross concludes that Smith & Associates therefore still owned the Expedition. Defendant Cross further contends that Trevor was a permissive user under the policy because the Smiths knew that Trevor was going to drive the Expedition.

The court disagrees with Defendant Cross' application of the Code and the Title Act to the case at hand. The argument is plagued by several flaws. Notably, Defendant Cross offers a tortured interpretation of unmoved goods under the Code and fails to justify the reading with any other legal authority specific to the facts of this case. Paramount, though, is Defendant Cross'

---

[50] Plaintiff State Farm concedes that title was improperly done in this case. Doc. 17, Pl.'s Response to Def. Cross' Mot. for Summ. J., p. 3 n. 3.

failure to explain this application of the Code and the Title Act in light of the controlling case law specifically relevant to this case.

In Texas, the right to possession and the power to control a vehicle's use determine a vehicle's ownership for insurance coverage purposes. Gulf Ins. Co. v. Bobo, 595 S.W.2d 847, 848 (Tex. 1980). A buyer is not covered by a seller's insurance policy as an additional insured because after a buyer and seller have reached an agreement to sell a vehicle and that vehicle is delivered, the buyer has control over the vehicle and "does not use the insured vehicle with the consent of the [seller]." Id. (citing Weatherford v. Aetna Ins. Co., 385 S.W.2d 381, 382 (Tex. 1964)). The conditional nature of a sales contract does not negate a buyer's ownership in a vehicle after possession and control have transferred. Bobo, 595 S.W.2d at 849; Trull v. Serv. Cas. Ins. Co., No. 14-07-00314-CV, 2008 Tex. App. LEXIS 5486, *8-9 (Tex. App.—Houston [14th Dist.] July 22, 2008, no pet.)(unpublished).

A seller who retains title "does so for security reasons only and has no control over the car and no right to its use" and, therefore, cannot legally give permission to the buyer's use of the vehicle. Id. at 848-49 (citing Weatherford, 385 S.W.2d at 382 (Tex. 1964)). The name on a vehicle's title raises a rebuttable administrative presumption of ownership, but it is not evidence of ownership itself. Tyler Car & Truck Ctr. v. Empire Fire & Marine

14

Ins. Co., 2 S.W.3d 482, 485 (Tex. App.—Tyler 1999, pet. denied); Minter v. Joplin, 535 S.W.2d 737, 738-39 (Tex. Civ. App.—Amarillo 1976, no writ).

In Bobo, the Texas Supreme Court found that a completed sales contract existed after the seller delivered the truck to the buyer in exchange for procuring insurance and a promise to pay off the debt on the truck. Bobo, 595 S.W.2d at 848. Possession and right of control and, therefore, ownership passed to the buyer despite the fact that the buyer did not obtain financing under the sales agreement before the truck was involved in an accident. Id.

Similarly, in another Texas case, a buyer had the right to possess and the power to control and, therefore, owned the vehicle after the buyer and seller had "executed documents establishing the terms of sale[] and the buyer had paid the down payment on the vehicle" even though the buyer had not obtained the proof of insurance required by the sales contract when the accident occurred. Trull, 2008 Tex. App. LEXIS 5486, at *8-9. Another Texas court found that the dealer had transferred ownership to the buyer when the transaction documents were executed, the dealer gave the buyer the keys, and the buyer had possession and control over the vehicle when he drove off the dealer's lot, even though the title certificate was not transferred to the buyer. Tyler Car & Truck Ctr., 2 S.W.3d at 484.

Defendant Cross contends that unlike in prior Texas case law,

15

delivery was incomplete in this case because the errors in the title certificate voided the sale under the Code and the Title Act. However, Texas courts have found that "[n]oncompliance with the Act does not override [a] . . . clear showing of a valid and complete transfer of ownership of an automobile."[51] Hudson Buick v. Gooch, 7 S.W.3d 191, 197-198 (Tex. App.—Tyler 1999)(citing Najarian v. David Taylor Cadillac, 705 S.W.2d 809, 811 (Tex. App.—Houston [1st Dist.] 1986, no writ)). A sale that does not comply with the Act "may still be valid as between the buyer and seller." Tyler Car & Truck Ctr.,2 S.W.3d at 485; Phil Phillips Ford v. St. Paul Fire & Marine Ins. Co., 465 S.W.2d 933, 937 (Tex. 1971). Texas courts have found that even when a sale was conditional and the seller retained title as a security interest, the buyer is treated as the owner for insurance coverage purposes when he has possession and right of control over a vehicle.[52] Bobo, 595 S.W.2d at 848-49.

There is clear and convincing evidence that Kathy had

---

[51] Strict application of the Title Act to void a vehicle sale in Texas is used in cases where "the rights of third parties are involved who are usually innocent purchasers of stolen or encumbered vehicles. Tyler Car & Truck Ctr.,2 S.W.3d at 485; Allstate Ins. Co. v. Dykes, 461 S.W.2d 519, 522 (Tex. Civ. App.—Tyler 1971, writ ref'd n.r.e.). Defendant Cross does not argue that the sale transaction involved criminal intent or fraud, and the court finds none, so the Title Act can not be used in this case to invalidate the sale between the Smiths and Kathy. Allstate Ins. Co., 461 S.W.2d at 522.

[52] Defendant Cross also urges a strict application of the Title Act on the grounds that cases such as Trull and Tyler Car & Truck Ctr. involved car dealers so correct title was not required in those cases by the Title Act. However, Trull does not discuss the Title Act, and Tyler Car & Truck Ctr. explicitly rejected the strict application of the Title Act that Defendant Cross urges the court to adopt in this case. Defendant Cross provides no other case law to support its argument.

possession and the right of control and, therefore, ownership over the Expedition by January 4, 2010. Kathy and the Smiths signed their contract for the sale of The Smith Team on November 2, 2009.[53] When Kathy took over the running of The Smith Team on November 3, 2009, she took possession and control over all the assets of The Smith Team, including the Expedition.[54] Both the keys and the Expedition were kept at the office of the business over which she assumed control.[55] During the month of November, Kathy cleaned the Expedition, made efforts to get insurance for the Expedition, and renewed the registration.[56] In December, she made payments to the Smiths towards the $7,500 she owed under the sale agreement.[57] Lisa signed the Expedition's title certificate and gave it to Kathy on December 30, 2009.[58]

Kathy took both sets of keys, the title, and the Expedition to her home on the weekend of December 30, 2009.[59] When the accident

---

[53] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 11-12.

[54] Ex. B to Agreed Stipulation of Facts & Summ. J. Evidence, Agreement of Purchase & Sale, pp. 1-2.

[55] Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's, p. 17; Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶ 13.

[56] Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., pp. 22, 25-26.

[57] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 14-15.

[58] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶¶ 18, 20; Doc. 14-4, Ex. D to Agreed Stipulation of Facts & Summ. J. Evidence, Tex. Certificate of Title, pp. 1-2 (unnumbered).

[59] Doc. 14-5, Ex. E to Agreed Stipulation of Facts & Summ. J. Evidence, Kathy's Dep., p. 44.

occurred on January 4, 2010, Trevor was driving the Expedition with Kathy's knowledge, and the vehicle was not being used for any business purpose.[60] Neither of the Smiths had driven the Expedition since mid-November.[61] By the time of the accident on January 4, 2010, Kathy had possession and the right of control over the Expedition and therefore, as a matter of law, Kathy was the owner of the Expedition, not Smith & Associates.

In light of this conclusion as to ownership, whether Trevor drove the Expedition with permission of Smith & Associates is irrelevant. The policy cannot cover the accident because the permissive user clause of the policy only applied to covered autos that the named insured, Smith & Associates, "own[ed], hire[d], or borrow[ed]."[62] Therefore, the policy's permissive user clause could not extend to Kathy and Trevor because Kathy, as the buyer, was not covered by Smith & Associates' insurance policy after ownership transferred. See Tyler Car & Truck Ctr., 2 S.W.3d at 484. The court finds that because Kathy was the owner of the Expedition, Plaintiff State Farm has no duty to defend or indemnify Kathy and Trevor under the terms of the policy.

### IV. Attorney's Fees

---

[60] Doc. 14, Agreed Stipulation of Facts & Summ. J. Evidence, ¶ 25.

[61] Doc. 14-6, Ex. F to Agreed Stipulation of Facts & Summ. J. Evidence, Lisa's Dep., p. 15; Doc. 14-7, Ex. G to Agreed Stipulation of Facts & Summ. J. Evidence, Andrew's Dep., p. 37.

[62] Doc. 14-1, Ex. A to Agreed Stipulation of Facts & Summ. J. Evidence, State Farm Tex. Bus. Auto Coverage Form, pp. 1, 7-8.

Both parties request attorney's fees under the Texas Declaratory Judgment Act ("TDJA").[63] The Federal Declaratory Judgment Act, which applies to this federal action, allows for "necessary or proper relief" to be granted to the prevailing party. 28 U.S.C. § 2202. Even so, the Federal Declaratory Judgment Act does not provide the requisite statutory authority to award attorney's fees in a diversity case. See Mercantile Nat'l Bank at Dallas vs. Bradford Trust Co., 850 F.2d 215, 218 (5th Cir. 1988).

The TDJA allows for the award of attorney's fees in declaratory judgment actions. However, because the TDJA is procedural, not substantive, it cannot authorize the award of fees in this federal declaratory judgment action. Camacho v. Tex. Workforce Comm'n, 445 F.3d 407, 413 (5th Cir. 2006); Travelers Indem. Co. v. Citgo Petroleum Corp., 166 F.3d 761, 772 (5th Cir. 1999). Therefore, absent specific references by State Farm to any substantive law that justifies such an award, the court refuses to make an exception to the American Rule, which requires litigants to bear their own attorney's fees. See Camacho, 445 F.3d at 412, 413; Mercantile Nat'l Bank at Dallas, 850 F.2d at 218.

## V. Conclusion

Based on the forgoing, the court **GRANTS** Plaintiff State Farm's Motion for Summary Judgment and **DENIES** Defendant Cross' Motion for

---

[63] Tex. Civ. Prac. & Rem. Code § 37.009.

Summary Judgment. Plaintiff State Farm is entitled to a declaration that it owed Kathy Scott and Trevor Moore no duty to defend or indemnify in the underlying lawsuits, but it is not entitled to attorney's fees.

**SIGNED** in Houston, Texas, this 30th day of March, 2012.

Nancy K. Johnson
United States Magistrate Judge